Good morning. Good afternoon, Counsel. Good afternoon. I'm out of U.S. v. Barrett. Ms. Horton, you ready? I am, Your Honor. Thank you. Okay. Good afternoon, and may it please the Court. Rachel Horton on behalf of Appellant Michael Barrett. I'd like to reserve three minutes for rebuttal. Okay. Mr. Barrett was convicted after officers who engaged in well-documented and serious misconduct participated in fatally flawed trials. This Court has twice said that Mr. Barrett's prosecutions deserve further attention, but he was not given an evidentiary hearing. The District Court did not grapple with the many serious factual and legal issues that are before this Court. It merely adopted the government's briefing. Ms. Horton, what concerns me? Obviously, this case is disturbing, and my guess is that Mr. Zosmer, as I do in his professionalism, he is perhaps as disturbed about the conduct. I'm hearing your feedback. I really can't understand the argument. Any better now? I'm hearing the argument twice. Well, maybe it'll take you two times to understand it, Bob. That's very true. Any better now? I don't know. We had this problem before. You still getting the echo? If you mute yourself, it might help. It's a complete replay. Well, when I take these off, I'll try it. Okay. Is that better? No, Judge McKee, we can't hear Judge McKee now. I'm good now. Okay, it went away. I'm sorry about that. Any better? It's fine now. Oh, okay. All right. These usually are a lot better. I was going to ask you, Mr. Zosmer, thank you for letting us know that. When I read this case, I was saying that my guess is knowing Mr. Zosmer's professionalism, as I do, that he's probably perhaps as concerned about the conduct of officers Kudzik and McConnell as you are. I was reminded of an argument I used to love to make when I was an  When I was in USA and I had a case that involves some really problematic witnesses. And that is tell the jury at the end of the case. You know, you may have reason to doubt the testimony. I understand that. Forget about everything they said. Don't consider anything they said in what's left. So let's, let's do that here. Let's take Kudzik and McConnell out of the case. In terms of the raid on the house and the construction possession. You have Gorman and Kovacs. Who basically testified to everything that McConnell and Kudzik did. They were there. It's constructed possession. The keys found in your client's pocket. I don't know if it was Gorman or Kovacs who found the key, but it wasn't Kudzik or McConnell. And then you've got the incident with the car. That they don't need Kudzik and McConnell to establish in the drugs part of the car. So given that we can get to the, the consecutive concurrent sentence. And.  I don't want to get into the details of this and why later on. Given what happened here. And you're right. It's, it's disgusting. Why, why doesn't that. Why, why should that have any impact whatsoever on the underlying can conviction? Because Kudzik and McConnell were not really material to the conviction. Your honor, we respectfully disagree because these trials were about officer credibility. As you pointed out the. This is from the Kudzik and McConnell. Why you got the trash bowl. You've got. I think it was Gorman who was there on the trash bowl. Maybe it was Kovacs. Again, when they go in and they find the gun behind the television. It's not Kudzik and McConnell. How does it help you? The government relies on officer Gorman's testimony. The defense did not realize at the time that it needed to press officer Gorman and challenge him. He could not have been in every single room. At all times during the apartment search. And he admitted when he testified that he said that evidence was recovered quote in his presence. And that simply meant that he was on scene, Not that he had firsthand knowledge of the evidence recovery. Say it again, please. When officer Gorman testified, he admitted at trial that it was his unit's practice for the supervisor to say. As they testified that evidence was testified quit in his presence. And so even if he didn't have firsthand knowledge, he would testify based on what he heard from his boots on the ground that he had.   And so he was not in the presence of his own officers who had allegedly recovered particular pieces of evidence. I thought in his presence was when he saw actually what he may not have been. Officer was called to testify. And I thought actually he did testifies to that. But wasn't he there and he saw what was going on? No, he, he was. Present on the scene on the day of the apartment search, but at J a three 66. He explains that in his presence is just shorthand for him being on the scene. And so the defense had no notice that it needed to really press. Which of the officers was relying on hearsay versus which of the. Officers recovered evidence. And so, for example, the key, which you mentioned. And it was. It was. It was. It was. Was there Kovacs who allegedly. In the prosecution's closing. It invited the jury to speculate about who possessed these two guns that were attributed to Mr. Barrett that resulted in a 60 month consecutive sentence. And we, we block quote that in our brief. He, the inference that he asked the jury to draw is simply because we think that the other two guns belong to the co-defendant. That these two guns belong to Mr. Barrett. That is the long. Constructive possession. If the person. The client has the access and control to the premises in which the gun is found, he's got the key. Isn't that enough to get concerned? The possession of the guy in the TV set. It's not your honor under this court's precedent in Brown, which is, let me give you the site because I don't think it's in the brief. It's three F third at six 80 to six 84. This court has explored whether a key is sufficient. And even for individuals who lived in the apartment and had a key, it's insufficient to show constructive possession. So the government needs more. There is also a defense witness who testified that she had not given Mr. Barrett the key. And this was not his apartment. It was a friend's apartment. And so the, the government's assertions that constructive possession are well-founded here are not taken. Well, once we dissect officer Gorman's testimony. This Miss Horton. Yes. Isn't your real problem in this case, the standard, which, uh, you have to establish in 22 55 H one that, that no reasonable fact fighter would have found the movement guilty of the offense. Thank you for raising that your honor, because obviously the parties disagree about the rule of decision here. Um, the district court did not, um, indicate what, uh, standard of review it was adopting. And our position is that 22 55 a, uh, provides the rule of decision in federal habeas cases. And so on remand, we would show a Brady violation since we have gone through the, this circuit's gatekeeping function. How would the, well, the Brady violation, um, wouldn't you have to show that the government was aware of the illegal activity of the officers of, of Kajik and McConnell? And is it clear that the government knew what these folks were up to at the time of this trial? Well, the officers were part of the prosecution team. And so under the Supreme court's precedent, their knowledge is imputed by law to the prosecutor. And so the prosecutor, so you're saying the Kajik and McConnell had a Brady obligation to come forward and say, well, you know, by the way, I've been engaging in this illegal activity that you need to let defense counsel know about. Is that what you're saying? Yes, your honor. The, um, the, the, well, the prosecutor himself has the Brady obligation to determine information that's in the possession of the police. And so here since these were the boots on the ground, investigating police officers, and they knew that they were engaged in misconduct that predated the trial and was contemporaneous with the trial, um, they needed to be cross-examined about that information. But how would they have known? None of that information was forthcoming until after the trial. And there are cases which Mr. Zausner cited in his brief that pretty clearly indicate that, uh, this would not become Brady material under circumstances. It is Brady material, uh, your honor, because the police officers know what they do. And so we, as the defense don't have to rely on the police officers, having some crisis of conscience and admitting on the stand, um, uh, what they have done, the information was in their possession. And so once the defense... When you say their possession, are you referring to Gorman and Kovacs? I'm referring... Kovacs knew what Kujik and McDonald were doing? Yes, your honor. As to the first search, it was, um, Kujik, McDonald and Bologna, all of whom have been disciplined by the Philadelphia police department and Kujik and McDonald have fabricated and planted evidence and fabricated, um, probable cause for, for search warrants. And so the defense has a right to cross-examine at trial when officers are engaged in that conduct. And, um, you know, how would that cross-exam go, right? You know, uh... I mean, they would have not, they would not have relied upon, had they known, had they known, they wouldn't have put Kujik and McDonald on the witness stand. They'd have used Gorman and Kovacs and other people who were not tainted. But you're asking me to think that that doesn't matter because the conduct of Kujik and McConnell is accredited to or charged to other police officers anyhow, because they're part of the investigation that under Brady, I'm not sure I agree with this, that under Brady officers have an obligation to disclose anything which is exculpatory. If you take that to a logical conclusion, you're suggesting Kujik and McConnell have an obligation to come forward and say, Hey folks, I've been involved in some stuff I got to tell you about, because you've got an obligation with Brady to let folks know that I'm doing this. I don't know of any case that would suggest that. Well, thank you for letting me clarify that, Your Honor, because it's, it's our obligation, it's our position that the government prosecutor has the Brady obligation. And so he needs to talk to each of the officers and understand what, um, exculpatory material evidence that officer knows about. Let's suppose that the prosecutor did that. Do you think that McDonald or Kujik is going to acknowledge at the time of trial that they had planted evidence in prior cases? The answer to that is going to be no. Right. And there was a Brady violation. There was no way to discover that. And the point I raised that the government has raised in their brief, that you did not respond to in reply brief was the, uh, it's not Brady material. It's not, it's not Giglio material. It is, it is absolutely Giglio material. The government does not have a safe hatch because the prosecutor was well meaning under the Supreme court precedent. Not well-meaning, did not know. Right. And under Giglio, there is not an obligation that the prosecutor himself knew of the misconduct when, um, and I believe that's in Kyle's v. Whitney, um, when the police officers who were boots on the ground knew it and they had an opportunity, um, Which officers are you referring to? Entire investigative team or specifically the officers who were subsequently indicted? Which officers? As to the first trial, it is Kujik, McDonnell and Bologna. As to the second trial, those are the officers who were indicted in the Rico action and our interpretation. All of them were acquitted except for Walker. Right. But the, the government doesn't defend that verdict at this point. I understand that, but, uh, we're getting to the question of whether or not this is Brady or Giglio material. The question was. Under Giglio, there's not a requirement that there have been a conviction. And so, um, you know, I understand, but there has to be quote material. It just can't be, there can't be an act that McDonnell or Kujik has never confessed to that you can therefore post hoc label as Giglio material. And that puts a burden. That's a burden that's impossible for any prosecution team, uh, to know about. Your Honor, the, the knowledge of the prosecutor himself is not the focus. We understand that. We understand that. Because in those cases where they say the prosecutor says, well, you know, maybe it was in the officer's file. Now we do this report. And I didn't know it was there. That's different. Clearly there's an obligation to come forward with that. Anyhow, this is very different because you're suggesting it's what my other questions tried to get to. Um, you're suggesting there's an apart on, there's an obligation on the part of the felons, the potential felons to come forward and confess their criminality so that it can be disclosed to, um, the defense counsel and to be as Brady material. And that, I don't know of any case that goes that far. And Mr. Sosner is suggesting in his brief that the case is in fact the contrary. Your Honor, it's, um, officers do not routinely plant evidence. And then years later, the defense finds out about it through some other mechanism. And so, um, just like 20 second, 22 55s are quite rare. Um, the factual situation that we have here is very rare. So this court's, um, uh, cases and Wilson, um, for example, which is, um, I think it's in a brief, but let me give you the site in case it's not, it's five, eight, nine F third at six 59. Um, they, they talk about how the, the prosecution team, because it depends so integrally on the police officers and they are in a position, um, where their misconduct impacts the defense. Um, so seriously, unlike a traditional witness, the P the police officers, uh, the prosecution with its superior knowledge and superior resources, they have to bear the burden when they have police officers who are engaged in this. They don't have the superior knowledge here. They had no idea that could you come and tell me, are you famous? We're doing this stuff. But Kujik and McDonald were part of the prosecution team and Kujik testified at trial and Gorman relied on Kujik and McDonald's actions and information that they provided to give his testimony. And so the, the trial was, I mean, there was no DNA, no fingerprints, no documents, um, that tied Mr. Barrett to this apartment. This was a battle of credibility and this court doesn't, um, predict what a jury would. It was the key. And who was it who seized the key from his pocket? It was Kovacs. Okay. And Gorman said he saw that. No, not that I, um, no, he didn't. He actually said that he was in a different room and he heard someone say, we've got a key and he didn't know who that was. Kovacs testified. Kovacs testified that he found the key. And there's no allegation anywhere. In fact, you don't even make it that there's anything, any Giglio material that you could have, uh, cross-examined Kovacs on. Can I, can we switch gears for a minute before, whether or not this is Brady material, I'm not sure it's even appropriate to be talking about Brady because I'm not sure you've passed, made it past the gatekeeping requirements. Why do you say that you have? This court granted, um, Mr. Barrett leave to file and second 2255 and the, um, 2244, um, which of course is familiar with, uh, expressly excludes 2255 in subsection a from its language 2244, which is about finality of the determination is about 2254 because of federal federalism concerns and the deference that's owed to state court judgments. And so we look to the text of 2255 to determine what portions of 2244 have been incorporated. So when we look at subsection a, as I mentioned earlier, that's the standard for federal defendants who are moving for habeas relief. When we look to H subsection H in 2255, the only reference is to a certification by the court of appeals. And so, um, this, this court has held that for defendants who are seeking relief from a new rule of constitutional law that's been made retroactive. Um, they do require that the defendant prove that in, uh, on remand to the district court. And that makes sense because that defendant sentence was not illegal at the time that it was imposed. However, for individuals who are seeking relief under H one, like Mr. Barrett, his, his entire theory of the case is that his sentence and conviction were tainted by constitutional violations. And so when we go back on remand, um, we should have to show a Brady violation or some other constitutional violation, just as you would in a traditional, um, 2255 a and I'd also like to point out that H one, I'll ask that again. Uh, you're, you're trying to, I know you're trying to avoid coming under that, but this is newly discovered evidence. It's newly discovered evidence, but when you look to the language of H one, it talks about conditional language. It says, the court of appeals shall certify the application to contain, and then it uses conditional language such as if proven and would be sufficient. If proven and viewed, which means, uh, newly discovered evidence if proven and viewed, uh, if a COA is properly granted as determined by the district court and the district court in this case did not find that that existed. And that's why you're here. Well, the, I don't think you've made it through gatekeeping. The text of 2255 does not refer to the district court. If Congress had wanted the, uh, district court to have a full blown hearing, um, it would have made that clear in 2255. What does if proven and viewed me? Well, where would it be proven and viewed? It's a, it's a gatekeeping function. Um, that this court determines. Okay. I'm sorry. I didn't hear that. Okay. You're saying, you're saying your, your argument is if proven and viewed by the court of appeals on a, on a request for a COA. Yes, because H refers to the court of appeals. That's what you're reading. That's what your interpretation is. Okay. Yes. Um, if, uh, 22, um, 44 and 2255, uh, cross-referenced each other, um, we would have argued, uh, the clear and convincing evidence standard. Um, but the textualist argument that we make in our reply brief, um, is very strong that Congress intended to defer to state court judgments. Um, but when there's a second 2255 at issue for federal defendants, um, we look to 2255 a, which provides the role of decision and habeas cases. Okay. So we do have some time and I'm kind of going around in circles with the same questions and same answers. So let me, um, you indulge us and, and we'll hear from your colleague, Mrs. Osmer, and then we'll be back in rebuttal. Thank you. Thank you. Thank you very much. Good afternoon. Your honors. May it please the court. I'm Robert Osmer on behalf of the government. Um, there are several points that I would like to cover. And of course, in answering the court's questions, uh, but to explain why 2255 H1 does apply here, why the district court has an obligation to make sure that 2255 H1 is satisfied. And then finally talk about the evidence in this case, which clearly shows that not only that the 2255 H1 standard is not met, but neither is the Brady standard. I will begin, however, by commenting on what judge McKee said about the concern that we have regarding the police conduct. Um, I think that's not debatable. I think the court's very aware that I personally, as well as many of my colleagues have spent many years, many unpleasant times dealing with the consequences of corruption in the Philadelphia police department. We take it very seriously. We try to prosecute the offenders and that's the court. Well knows one of the pernicious effects of police corruption is that it often results in the need to dismiss cases of guilty people because you can no longer rely on the credibility of the officers involved. And so we've had so many of these issues over the years and, and have dealt with them. But what we've done in looking at other cases, and I think appropriately is we look very carefully to see whether the conviction rests on the information of the tainted officers, because what we also know is that the tainted officers, thankfully, as far as we know, are still the exception rather than the rule. The Philadelphia police department has thousands of dedicated officers who get up every day and do their best to faithfully enforce the law. And so we're not going to just throw out any conviction because one officer knew another officer who we now know may be problematic. So in this appeal, we're not focused on the second trial of Mr. Barrett. If we were, if that were the conviction, I have no doubt that that would be one of the dismissed cases that that trial rested completely on the testimony of officers who were later indicted by my office. Even if they were acquitted, we would be very uncomfortable relying on that testimony. But he was all, he was actually mostly acquitted in that trial, maybe by a savvy jury. He was only convicted under 922 G. It was a fully concurrent sentence that was imposed. And so unless the court has questions about it, we're really focused on the 2005 case because that's what drives this matter. And what the 2005 case is, is a matter that relies on credible officers or at least we have no basis whatsoever then or now to say that Sergeant Gorman or officer Kovacs or the other people involved have any credibility issue whatsoever. And that's where this case fails. And that's why we do maintain that this verdict should be preserved in terms of the questions that I said, I would address first 2255 H one, that standard requiring clear and convincing evidence that no reasonable juror would acquit would convict upon hearing the new evidence that that's very familiar to us and to the court. The Supreme court has called that the actual innocent standard that applies in a number of contexts. And it's very difficult to reach and it applies here. It plainly discusses newly discovered evidence, which is what we have. Now there is an issue when the new claim involves Brady and other courts, not this court, but have discussed the problem very thoughtfully. And we cite those cases in our briefs because I can easily understand someone saying, well, wait, you, I went through the first 2255 and the government was still withholding evidence. And I didn't find out about that evidence till after my first 2255 was litigated. How can you now hold me to a worst standard? That's not fair. I understand that. And courts have understood that. And nevertheless faithfully applied the clear language of 2255 H one. The clearest discussion of this has been in the ninth circuit in the Brown versus Mooney's case in 2018, which was cited in our briefs. Judge Samandel also, I think it was incorrectly cited in my colleague's reply brief. Judge Samandel agreed that 2255 H one has to apply in this context, despite the concern. Now I also should say that that concern that you're learning about Brady information after the first 2255, it actually doesn't apply in this case. In this case, the key information is about Kujic. Kujic is the one who suffered the most accusations. He was accused of putting false information in search warrants. He was accused of paying an informant so that that informant could pay rent for a place that Kujic owned. All of that was actually known in 2009 and was disclosed by the government to Mr. Barrett's attorneys in 2009. And it was brought up in his direct appeal in this court. And this court acknowledged that that was not sufficient to affect the verdict because none of that information. Then or now was about the 2005 case, about any suggestion that Mr. Kujic had done anything wrong in this case. So we were really not in that troubling situation where you may have a Brady disclosure after the first 2255. But even if we were, the case law is unanimous that this 2255 H one standard has to apply. It was developed by Congress to assure finality in habeas litigation. And that's what it does. Now that leads to the second question, which is the whether this is binding on the district court or not. And the answer is it is it's not just up to the court of appeals as Ms. Horton to suggest to say that you meet that threshold. And now it's a brand new ball game. You treat it as any other 2255. This court has repeatedly held that it still falls on the district court to assess whether the 2255 H one standard is met in order to allow any relief. And in fact, in this very case, I could actually say it's a law of the case because in this very case, Mr. Barrett was first given a certificate of appeal ability or rather permission to proceed on the second 25. Back in 2017 in the matter that we're now arguing today, judge Fisher was on that panel. It's in. It's at page 1768 of the appendix, which is the approval of going forward on a second or successive petition. And that very order on page 1768 correctly says this is not a final call. It's still up to the district court as to whether 2255 H one is met. And the recent cases that, that confirm that precedential decisions, the peppers case in 2018, eight 99 F 32, 11, the Hoffner case, eight 70 F third 301. That's third circuit, 2017, the Matthews case. Nine 34 after two 96. Those are all cases just within the last three years in which the court has confirmed that it's still the district court's obligation to make sure the standard is met. I think I have the privilege as I look at it. Of losing on the merits, every one of those cases. And arguing to this court. But, but, but those matters did go back to the district court for the district court to then make the assessment. And most of those defendants I know. Did not receive relief or we're still litigating hundreds of those cases relating to the Davis decision in the third circuit. So now Ms. Horton understandably focuses on the statutory language that 2241 does look like. It's 2244 looks like it's mostly about state habeas matters, but the key is that in 2255 H it says that in a federal matter, this court has to certify that those criteria are met. And what it says is certify as provided in section 2244. And this court therefore has always incorporated the standards of 2244 with regard to second or successive federal petitions. And in fact, this court has explained at length why it's still up to the district court. This court has explained that it's given this court is given a limited amount of time to rule on whether a second or successive petition should go forward. This court does not hear evidence. It merely reviews the papers. And that's why we do have the fuller inquiry that takes place by the district court. So for these reasons, the clear and convincing standard is what applies here. That actual innocent standard that has to be met. Let me ask you a question about the COA that's relevant to this case. Was it misstated? I believe so, your honor. And in fact, the, the parties, the, the defendant did not ask the court for a certificate of the pillar, the ability with respect to Brady. And that wasn't the main focus of the discussion in the district court. I do think it was incorrect to say that it's, it's a Brady issue. Now certainly maybe it's not incorrect in the sense of if he gets past the H one standard and shows clear and convincing evidence of actual innocence, then we do move on to Brady. I think by that point he also prevails because if you meet the, the first test by clear and convincing evidence here, you're going to meet the second test. So perhaps that's what the court had in mind, but in suggesting that you can simply have a Brady claim, that's just the sole basis of your second or successive clearly conflicts with the language of 2255 H one, which talks about newly discovered evidence. With regard to the evidence in this case, the, we have argued repeatedly that the way this works is you take out Kujik and McDonald. Taking out McDonald is easy. He didn't testify. He didn't testify at the suppression hearing. He didn't testify at the trial. So that leaves you with Kujik. Kujik gave six pages of testimony at the trial, simply saying that he recovered one of the two guns in the living room. That's it. The, the notion that if you took out that testimony, the other gun was recovered by Kovacs who also recovered the key from Mr. Barrett's pocket. So if you take, we saw could actually cover the gun from behind the TV set. Sergeant Gorman testified that he observed the recovery of the weapons. And there, I do disagree with my friend's discussion of the record. She says that he just says in my presence as if, you know, that means he saw everything when he really didn't. That's not what he testified. It's a page 366. He said, when any evidence is seized, it's the general practice in our squad. And throughout the narcotics Bureau, your call to that location, just simply. So when we do come to court, we could say, yes, we recovered in our presence and we could give you the condition or how it was placed. So what he's saying is I'm, I go to the scene so I can look at it so I can be a witness. And, and he did testify that the guns were, this is Gorman, testified that the guns were recovered in the living room. But they had been recovered before he got there. If he went there, he could say. Well, actually not, he was explaining the, in my presence, but he was actually present. He was, there were four or five officers who breached the door and went into search and they described it in their testimony in graphic detail. He was in that team. Gorman was in the apartment the entire time. This was his case. The, so if you take out Kujik at that point, it just doesn't matter whether we're talking about the H one standard or whether we're talking about Brady, you know, under Brady's, it's still the defendant's obligation to show a reasonable probability of a different verdict. You can't meet that either. If you do what this case relies on is Gorman. He has never been accused or implicated in any police wrongdoing. We rely on his testimony. There's no reason for us not to, to look at the evidence that we have.    And we have to look at the evidence that we have. What we've seen, I think, unfortunately in the briefing here, it's just widespread accusations of guilt by association. And that's it. There's a statement in the reply brief that says any of the corrupt police officers who were conducting the search. Could have fabricated evidence during the search. I mean, that, that kind of accusation does not meet H one. It's not Brady. It's not anything other than. A wild accusation against officers. Who've never been accused of any wrongdoing. Corrupt officers. Right. But I mean, there are lots of statements there. Page 16 of the reply brief says the police officers involved in this prosecution engaged in a rampant contemporaneous misconduct in drug related cases. The defense has put forward no evidence whatsoever of any of that. In fact, they haven't even shown that these few allegations against Puget and McDonald. Even took place in 2005. The case that the government brought against the other officers. Started in 2006. It involved a six year course of conduct. From 2006 to 2012. McDonald is sanctioned in 2014. We're told. For a single instance of making a false statement on a search warrant. Now Kujic. We know that the allegations came earlier because we disclosed them in 2009, as I mentioned earlier.  2009, as I mentioned earlier. But there's been no showing that any of that took place in 2005, but I'm willing to say. Take out Kujic testimony. It's the only testimony here. That could possibly be implicated. Gorman has never been implicated and he is the key person from beginning to end. And Kovacs has never been implicated. He takes the key to Barrett's apartment to the apartment out of Barrett's pocket. He finds the other gun in the living room. Now I know the defense would like to relitigate this case, but yeah. And just make arguments about the Gorman really see, was it too dark when he saw the trash ball? But this is a secondary success of 2255 motion. This is not an opportunity to relitigate a trial. When it did get litigated. And when it was brought up on direct appeal. Again, it went to the panel. This is three 94 Fed appendix eight 66. When this court confirmed that can affirm the conviction. Judge Fisher being ubiquitous is again, again on the panel. This opinion was, was written by judge Randall. And let me just wrap up by reading just this one short paragraph. Affirming the sufficiency of the evidence. It says here, in addition to having been found in an apartment containing drugs and packaging material in plain view in the kitchen and guns hidden in the living room. Barrett had a key to the apartment in his pocket. He was observed by the police disposing of trash from the apartment that was found to contain drugs and drug packaging paraphernalia. And he fled to the second floor when the police arrived to execute the warrant. Every single word of that paragraph that was written by this court. Depends on the testimony of Gorman and Kovacs and no one else. There is nothing there that even relies on Cooch's testimony. And this court held that that was sufficient to uphold the verdict. If that's true. Then certainly nobody could say that this new information about Kujik many years later would lead no reasonable juror to, to convict the defendant, or even that there's a reasonable probability of a different result. It just doesn't, doesn't work that way. Now, I guess the only other factual matter that I should address. It involves the. The question of Gorman seeing Mr. Barrett, the defense has said, well, no, that was McDonald. McDonald's the one who saw him when he did the trash pull. And therefore you need a McDonald. Well, obviously the government didn't think it needed McDonald because. Didn't even call him as a witness at trial, but in fact, Gorman testified that he personally saw page. 401 of the appendix. He, he, he actually got a little bristled on cross-examination and he said, I viewed the person that is your client seated over there in the blue jacket in the suit when he was down at the bottom. And I knew him by face and immediately upon seeing him when I did the warrant, I knew that to be him, the man that came out on that day. And we just can't relitigate that now. It was argued in front of the jury. The defense had their witness. They called the girlfriend who said, no, this was the only time Barrett was ever in the apartment. Jury rejected it. This court found the evidence sufficient. There is no new evidence whatsoever. That would mean either the H one standard that applies or the Brady standard. And for that reason, you know, we believe the court should have found. Thank you, Mr.  Three minutes, your honor. Well, you warned me when I'm done. When are you a sudden stop? Okay. Understood. I believe Mr. Zellsmer misspoke this court, as I acknowledged in the opening, has applied H two to 2244. That's the peppers case for example, but not H one, the H one cases that the government sites are 2254 cases. For example, the first circuit and Marina Morales. Let me give you that site. Three 34 F third one 40 is an example of a circuit court that has applied Brady and not apply the clear and convincing evidence standard at a second 2255. Second. The third circuit court is a circuit court that has applied the  And the, the government emphasizes to quote that we have no evidence, but Mr. Barrett didn't have an evidentiary hearing. The district court denied him that, and the papers here do not conclusively show that he's not in town truly. Because the. Proposal that the government is making is deeply troubling. That it can rely on supervisors who relied on other officers who were engaged in conduct. That was involved. Fabricating and planting evidence. Basically saying that there was more than one. Officer on the scene. Available to testify. Did testify. Some of the officers on the scene, particularly one who Jack. Was subsequently discovered to be changing evidence and engaged in all kinds of. Reprehensible ethical conduct. But there are other officers on the scene who were not engaged in that. And so, you know,  that the district court denied him that evidence. We saw and testified to the exact same thing. And we know that that's wrong because officer Gorman testified about all of the evidence and he was, this was a multi room apartment. It was a multi floor apartment building. And he did not see all of that evidence being recovered. And the defense had no idea that it needed to probe what he meant at the time. The last point I'd like to make is about the direct appeal. Mr. Barrett challenged the sufficiency of the evidence as to the second trial and his direct appeal. The gun that was allegedly found in the car. He has now served his 10 year custodial sentence. And here we are more than 10 years later and the government refuses. To defend that verdict. The government though defended the verdict at the time. On, on the second appeal on the second, pardon me on the second trial. If we do not get relief on the first trial, then we are not seeking a remand as to just the second trial. Based on the concurrent sentence case law that cited in the government's brief. But I, I want to emphasize that the government has said over and over, there's not enough evidence here. There's not enough evidence here, but now it concedes that when it defended those officers and cited to their testimony to this court, it can no longer defend those officers. And we simply ask that what happened at the second trial, not happen at the first trial. And then at the very least we get a remand for an evidentiary hearing so that the court can hear the evidence and issue a reason decision. What would be the evidence that you want to represent? That's what I'm not. Do you want to establish that Gorman really wasn't in position to see what he said he saw when the gun was recovered or they didn't see according to by deed, the defendant during the trash pool, or what is it that you're trying to what's the evidence you want to bring out? Yes, Your Honor. We would determine what Gorman saw recovered versus what he learned from the case reports from the other officers. And what was hearsay that's inadmissible. Mr. Zausman said the trash bowl, Mr. Zausman just read from the record. You know, the kind of question that I imagine any lawyer hates to get in response to an answer. I mean, any answer you hate to get in response to a question where the witness gets upset and just totally blows your way by saying, I saw your client. He went out, he pulled the trash. It was him, the guy sitting right there next to you. I'm not sure what you want to be litigated by that. And maybe the gun's different. It is impossible that Gorman saw all of the evidence being recovered from the apartment. So reading the testimony end to end that Gorman gave, he could not physically, he could not have possibly seen all of that in this multi-room apartment with multiple floors. At least it was seen as the gun. And the extent that he sees the trash bowl that verifies or corroborates the evidence.  I don't know that he has any constructive possession in the key coming out of the pocket. That's the strong problem of evidence. Mr. Wasn't that he has. Dominion over that apartment and where the gun is. No, your honor. I mean, the, uh, Miss Ayers who, uh, I think Mr. Zosima misspoke was not Mr. Barrett's girlfriend, but she was the. Woman in the apartment. Um, she testified that, uh, the key was hers. And so we would call, um, Her. I don't know.    I don't know. I don't know. I have dominion over the house of the other person. Cause they've just given it to me. I'm not sure that negates constructive possession, especially when you add into it. Exercising control via the trash pool, but. It doesn't. Time's up. We're getting kind of circular. There's a final point to want to make. I don't want to. Include you for making it. Thank you. Judge Mickey. The jury had to assess the officer's credibility here. Um, reviewing the government's brief. It seems like this was an open and shut case, but once you actually look at the testimony, this was not an open and shut case. And we asked that Mr.  Thank you. Thank you. Thank you very much.